### IRRIGATION SALES & ENGINEERING
### COMPANY *v.* LAMANTIA.

1. CONTRACTS—EXPRESS CONTRACTS—FINDING OF COURT—EVIDENCE.
   Finding of trial court that there was no express contract between plaintiff and defendant for installation of irrigation system on latter's property *held,* not against the clear preponderance of the evidence.

2. WORK AND LABOR—EXPRESS CONTRACT—PARTIAL PERFORMANCE—IRRIGATION SYSTEM.
   Plaintiff installer of irrigation systems was entitled to recover balance due for work and materials for partial performance of installation furnished at request of defendant, where the court found there was no express contract for such work.

3. SET-OFF AND RECOUPMENT—EXPRESS CONTRACT—EVIDENCE.
   Defendant was not entitled to recoup damages for nonfulfillment of claimed contract, where trial court's finding there was no express contract is supported by evidence.

4. WORK AND LABOR—DEFICIENCY IN PERFORMANCE—EVIDENCE.
   Amount estimated by plaintiff as cost of completing underground sprinkler system for which plaintiff had been completely paid is ordered deducted from amount due plaintiff for other labor and materials furnished in installation of irrigation system on defendant's land, where plaintiff's testimony in such respect is the sole testimony with respect to such item.

5. SAME—INVOICES—EVIDENCE.
   Invoices rendered by plaintiff were properly considered by trial court in action for labor and materials, where there was testimony by plaintiff that the invoices represented materials and labor furnished defendant by plaintiff and defendant offered no testimony that the same were not furnished.

---

REFERENCES FOR POINTS IN HEADNOTES

[2]. 58 Am Jur, Work and Labor §§ 3, 4.

6. SAME—DISALLOWANCE OF ITEMS—CROSS APPEAL.

    Disallowance of 2 items of extra cost in establishing pipeline for irrigation system on defendant's land is not disturbed, where plaintiff does not cross-appeal and concedes trial court's finding as to facts to be correct.

7. COSTS—NEITHER PARTY PREVAILING IN FULL.

    No costs are allowed upon modification of judgment in non-jury case, since neither party has prevailed in full.

Appeal from Berrien; Westin (Edward A.), J. Submitted April 10, 1952. (Docket No. 46, Calendar No. 45,170.) Decided June 2, 1952.

Action by Irrigation Sales & Engineering Company, a Michigan corporation, against Joseph La-Mantia for amounts due under a contract and on common counts. Set-off and recoupment by defendant against plaintiff. Judgment for plaintiff. Defendant appeals. Modified and affirmed.

*Gore & Williams,* for plaintiff.

*Harvey & Fisher,* for defendant.

REID, J. Plaintiff brought suit per count 1 of the declaration to recover for moneys due under a contract claimed to have been performed, and per count 2 of the declaration, on common counts in assumpsit for labor and materials furnished to defendant. Defendant claimed a contract and sought recoupment based on nonperformance by plaintiff. On trial before the court without a jury, the court found that there was no contract and disallowed the recoupment, but found for plaintiff under count 2 of the declaration, disallowed 2 items claimed by plaintiff and rendered judgment for plaintiff against the defendant for $2,683.93 and costs. Defendant appealed. Plaintiff did not cross-appeal.

Defendant owns property near Stevensville, Michigan, traversed by the highway known as US–12, and extending but not in a straight line from Lake Michigan to a line east of Hickory Creek, a distance of about 4,500 feet. In July or August, 1947, defendant was desirous of installing an irrigation system on his said property, and was interviewed by B. L. Stanford, Sr., a member of and representing plaintiff corporation. Plaintiff was in the business of installing irrigation systems. Defendant described to Stanford, Sr., generally the portion of defendant's farm that defendant wanted serviced by irrigation, *viz.,* the cultivated areas, and particularly about 5 acres of small vegetables. Defendant claims that on the advice of Stanford, it was decided that the source of supply of water for irrigation should be Hickory Creek rather than a pond on the east end of the property. Lake Michigan could not well be the source of supply because of wave action and drift of sand at the lake which would cause an intake there to be unreliable. Defendant also desired an underground irrigation system for the lawn and area near the house.

Defendant alleged that about August 1, 1947, plaintiff expressly undertook and agreed to furnish all materials and equipment and labor necessary to install an efficient sprinkling system on the premises of the defendant to the satisfaction of defendant for the sum of $8,000 and to complete said construction in a good workmanlike manner during the 1947 season, and claims recoupment for damages by reason of nonfulfillment of the contract on plaintiff's part. Plaintiff admitted said agreement substantially as described by defendant excepting that plaintiff denied that the contract was to be executed to the satisfaction of defendant.

It seems that the parties had in mind that there should be a written agreement. Defendant refused

to sign the agreement prepared and submitted by plaintiff about the middle of August, 1947. Brook L. Stanford, Jr. (also representing plaintiff), the son of the Mr. Stanford heretofore spoken of, tendered to defendant at a meeting in defendant's office in Chicago in September, 1947, a draft of another proposed agreement, which defendant also refused to sign. The price of $9,177.13 had been agreed on, but certain terms and items not agreed on by the parties. In the meeting in defendant's office in Chicago, the price was agreed to be reduced by the amount agreed on for the motor, pump, and equipment attached thereto, $1,100, but it seems there were certain details not yet agreed on; at least, no written agreement could be agreed on.

Defendant repeatedly urged that the work of installing the system should be begun.

Defendant testified:

"About a week or two after the letter of October 21, 1947, Mr. Stanford, Jr., came to Chicago and I had quite a little talk with him. They gave excuses because they couldn't get the pipe so late and we met in Shoreham with the son and dad. The son sat in my screen house on the lawn and started making diagrams where the different openings were to be set and I was supposed to get a sort of a blue print later, which never came. Nothing further happened on that occasion *except they promised to go ahead with the system.* That would be subsequent to the letter of October 21st, perhaps the last part of October, 1947." (Italics supplied.)

Plaintiff shortly after the latter part of October, 1947, began bringing materials.

Plaintiff's witness, Stanford, Sr., testified that during the fall and winter of 1947, plaintiff got the underground sprinkler system about 90% completed. The underground system is permanent and cannot be removed. The sprinkler irrigation system for the

rest of the farm is portable; the pipes can be moved to different positions on the farm. Plaintiff placed a line of pipe under the railroad (at a cost of $1,049.53), and also a line under US–12, the highway, at a cost of $300.

Defendant claims that at no time was there any discussion about using the pond or pool as the source of supply. Plaintiff claims that the job was about 10% under way when the first conversation between the parties occurred about changes. Plaintiff claims that the original agreement was to use the pool as the source of supply and that the first talk concerning a change occurred at defendant's house in the spring, that then defendant proposed the change of the source of supply from the pond to Hickory creek, that such change required more pipe than was contemplated originally by the parties. Plaintiff claims that from time to time other changes, including location of pipe along a different line, had been and were thereafter suggested by defendant. Plaintiff claims for the pipe that was in the original agreement and the extra pipe for going under the railroad plus actual cost of operations.

Defendant does not agree to plaintiff's statements as to the nature of disputes which occurred between the parties. Defendant complained to plaintiff in 1948 because the job was not finished, gave plaintiff 2 weeks in which to get an "operating job" or plaintiff would be considered "off the ground." The plaintiff left the job soon after defendant gave this notice. Defendant claims that he was obliged to expend over $7,000 to finish the job after Mr. Stanford left. Defendant claims a total recoupment of $7,483.45.

Defendant claims as the first question involved that the finding of the trial court determining that there was not a sufficient meeting of the minds of the parties to constitute an express contract is erroneous. After a careful examination of the testi-

mony and of the exhibits, we conclude that that finding by the trial court is not against the clear preponderance of the evidence, and affirm the finding.

Defendant states his second question involved thus: "Could there be a recovery under the common counts for partial performance?" The finding by the trial court being against the existence of an express contract, the plaintiff cannot recover under the first count but is entitled to recover under the second count of its declaration, for balance due for the work and materials furnished at request of defendant. We further find that the court's finding of a balance in favor of plaintiff under the second count of the declaration of $2,683.93 is not against the clear preponderance of evidence, and that finding, except as hereinafter found, is also affirmed. We do say, however, that the testimony bearing on the account is very conflicting and difficult of precise determination.

Defendant's third question is, "Should defendant's recoupment in the amount of $7,483.45 have been allowed?" The trial court's finding (affirmed by us) that there was no contract, inevitably precludes the allowance of defendant's recoupment of damages for nonfulfillment of the claimed contract.

Defendant's fourth question is, "Should the amount of $2,500 have been included in the judgment for the underground system?"

An examination of the testimony discloses that the underground system (for the lawn and area near the house) was a separate item under the special charge of Brook L. Stanford, Jr., for plaintiff. Stanford, Jr., testified that he was in charge of this work, kept closely in touch with defendant as that part of the work progressed, that plaintiff was paid $2,500 as for the completed job; that when plaintiff was ordered off the job, there remained only "to flush the line out and screw the sprinkler heads on

and put the valves on and go ahead and use it. We agreed to test the system and we never had a chance to do so. In my opinion, a fair appraisal of what remained to be done on the system would be $50, it was almost completely finished."

Two witnesses for defendant testified as to leaky joints of the underground system; 1 witness for defendant testified that the underground system lacked provision for drainage, which would be necessary to prevent freezing of the underground pipes in the winter. It appears from testimony of plaintiff's witnesses that defendant paid $2,500 for the underground system, and plaintiff's bill of particulars shows cost of underground sprinkler system, $2,500, and that that amount was paid to plaintiff. There is no definite statement by any witness for defendant, setting forth the loss or damage to defendant by reason of deficiency of the underground drainage system. Still the estimated $50 shown by Stanford, Jr., should at least have been deducted from plaintiff's credit item of $2,500 for installing that part of the whole job.

It is true that Mr. Ackerman, witness for defendant, who was called in by defendant to finish the installation of the sprinkler system, after plaintiff was ordered off the job, testified, "Exhibit C is an invoice for the work and material on the underground sprinkling system amounting to $7,483.45. I was paid that amount." However, in the absence of any testimony showing that the underground system as added to by the work and materials furnished by witness Ackerman was the same system and no greater or different from the system as spoken of between plaintiff and defendant, the item spoken of by Ackerman as paid him, does not contradict plaintiff's showing of the value of the work and material furnished by plaintiff on the underground system. On the contrary, there is testimony that Ackerman's

bill for $7,483.45 is for work and materials furnished by Ackerman on the entire sprinkler system.

The fifth question involved stated by defendant is: "Do invoices submitted by plaintiff constitute a proper basis for determining damages?"

In considering this last question involved, there is testimony on behalf of plaintiff that the invoices represent materials and labor furnished defendant by plaintiff; defendant offered no testimony that the same were not furnished, so that the court properly considered the invoices in arriving at the amount due plaintiff.

The court disallowed plaintiff's claim for the 2 items of extra cost involved in establishing the line for the pipe under the railroad and the highway US-12. Plaintiff does not cross-appeal and concedes the court's finding of facts to be correct.

The finding and consequent judgment appealed from, is affirmed, after deduction of $50 from the amount found for plaintiff. No costs, neither party having prevailed in full.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.